2006-NMCA-111

142 P.3d 374

**Pedro TERRAZAS, Socorro Terrazas, Agustina E. Garcia and Filigonio Garcia, Plaintiffs–Appellees,**

v.

**GARLAND & LOMAN, INC., Defendant–Appellant,**

**Texas Mutual Insurance Company, Plaintiff–in–Intervention/Appellee.**

No. 24,581.

Court of Appeals of New Mexico.

July 26, 2006.

MCML, P.A., Randi McGinn, Albuquerque, NM, Scherr, Legate & Ehrlich, James F. Scherr, El Paso, TX, Mario A. Esparaza, Las Cruces, NM, for Appellees.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Jocelyn Drennan, Simone, Roberts & Weiss, P.A., David Frizell, Albuquerque, NM, Cervantes Moberly, P.C., Joseph Cervantes, Las Cruces, NM, for Appellant.

Miller Stratvert, P.A., Lawrence R. White, Roxanna M. Chacon, Las Cruces, NM, for Plaintiff–in–Intervention/Appellee.

## OPINION

ALARID, Judge.

{1} Defendant–Appellant Garland & Loman, Inc. (G & L) appeals from a jury verdict in favor of Plaintiffs, Pedro and Socorro Terrazas and Filigonio and Agustina E. Garcia. G & L argues that the district court erred by applying Texas law and refusing to instruct the jury on comparative negligence under New Mexico law. We agree that the district court erred in denying G & L in-

structions on comparative negligence, and accordingly we reverse and remand for a new trial on the issue of comparative negligence.

## BACKGROUND

{2} G & L is a New Mexico corporation located in Las Cruces, New Mexico, licensed by the State of New Mexico to engage in general contracting. G & L agreed to act as general contractor in the construction of a 75,000–square–foot prefabricated building in Las Cruces. G & L entered into a subcontract with Alamo General Contractors, Inc. (Alamo), a Texas corporation with a New Mexico contractor's license. The subcontract obligated Alamo to obtain workers' compensation insurance. Alamo obtained workers' compensation insurance from Texas Mutual Insurance Co. (Texas Mutual), a Texas insurance company.

{3} Two of Alamo's employees, Plaintiffs Pedro Terrazas and Filigonio Garcia, both residents of Texas, were seriously injured when the metal framing of the building collapsed while they were working in separate scissor lifts at the roof level of the structure.

{4} In March 2001, Pedro Terrazas filed suit against G & L in Doña Ana County District Court. Terrazas alleged that his injuries were proximately caused by the negligent conduct of G & L. G & L filed an answer stating that Terrazas' injuries were caused by an "act of God"—a sudden and unexpected gust of wind that caused the structure to collapse. As an affirmative defense, G & L asserted the comparative negligence of others, including Terrazas, his fellow employees, Alamo, and unknown persons.

{5} Thereafter, Filigonio Garcia filed a Plea in Intervention containing substantially the same allegations as set out in Terrazas' complaint. G & L filed an Answer Denying Liability and asserted that Garcia's injuries resulted from an "act of God." G & L asserted, as an affirmative defense, the comparative negligence of Garcia, Alamo, and Garcia's fellow employees. Plaintiffs, joined by their spouses, filed a First Amended Complaint. G & L filed an Answer Denying Liability. G & L asserted the comparative negligence of "individuals or entities other than [G & L]" as an affirmative defense.

{6} Texas Mutual moved to intervene in the case. G & L initially opposed Texas Mutual's motion to intervene, but thereafter withdrew its opposition. Texas Mutual filed its Complaint in Intervention, requesting judgment against G & L "for all sums proven to have been paid pursuant to its policy of insurance out as a result of the Defendant['']s negligence." G & L filed its answer to Texas Mutual's complaint, admitting that Plaintiffs had been injured, but denying that Plaintiffs' injuries were caused by G & L's negligence. G & L asserted, as an affirmative defense, that Texas Mutual "is barred from recovery, in whole or part, due to the comparative negligence of individuals or entities other than [G & L], including the insured of [Texas Mutual]."

{7} In March 2003, the district court entered a scheduling order setting the case for trial on a trailing docket in September 2003. On August 28, 2003, Plaintiffs filed a motion seeking application of Texas workers' compensation law to determine whether the question of Alamo's negligence should be submitted to the jury. Plaintiff also filed a motion in limine seeking to preclude G & L from making any reference to the negligence of Alamo on the grounds that such evidence was not relevant under Texas workers' compensation law. G & L filed responses arguing that New Mexico would follow the conflicts-of-law principle of *lex loci delicti*, and that New Mexico substantive law, including pure comparative fault, would apply. At a September 11, 2003, pretrial hearing, the district court granted Plaintiffs' motions, ruling that Texas law would apply. G & L filed a motion for reconsideration. The district court denied the motion.

{8} At trial, Plaintiffs presented evidence that G & L was negligent. G & L does not dispute that this evidence was sufficient to support a finding that G & L was at fault and that G & L's negligence was a proximate cause of Plaintiffs' injuries. G & L presented evidence that Alamo was negligent in not providing adequate temporary bracing and that the collapse of the structure was due to Alamo's failure to adequately brace the structure.

{9} G & L tendered instructions on proximate cause and comparative negligence patterned on New Mexico Uniform Jury Instructions. The district court rejected G & L's proposed instructions and instead submitted the case to the jury under instructions based on Texas law. Under these instructions, the jury could consider evidence of Alamo's negligence only in determining whether Alamo's negligence was the sole proximate cause of Plaintiffs' injuries. The jury was not given any instructions on comparative negligence. The jury returned a verdict in Plaintiffs' favor and against G & L, awarding Plaintiff Pedro Terrazas $1,130,821.92, Plaintiff Filigonio Garcia $1,562,428.49, and $10,000 each to Plaintiffs Socorro Terrazas and Augustina Garcia. Applying Texas subrogation law, the district court awarded Texas Mutual $69,375.70 from the damage award in favor of Pedro Terrazas and $69,375.70 from the damage award in favor of Filigonio Garcia.

## DISCUSSION

■ {10} A district court's choice-of-law ruling presents a question of law subject to de novo review. *E.g., Mikelson v. United Servs. Auto. Ass'n,* 107 Hawai'i 192, 111 P.3d 601, 606 (2005); *Edwards v. McKee,* 76 P.3d 73, 76 (Okla.Civ.App.2003).

■ {11} The initial step in conflicts analysis is *characterization:* deciding the area of substantive law—e.g., torts, contracts, domestic relations—to which the law of the forum assigns a particular claim or issue. *Ratzlaff v. Seven Bar Flying Serv., Inc.,* 98 N.M. 159, 162, 646 P.2d 586, 589 (Ct.App. 1982) (observing that "[u]nder a traditional conflict of law approach, we must first determine under what area of law the dispute arises"); Eugene F. Scoles et al., *Conflict of Laws* § 3.2 (3d ed.2000). The forum applies its own rules in characterizing an issue for conflicts analysis. Restatement of the Law of Conflict of Laws § 7(a) (1934) (hereafter First Restatement); Joseph M. Cormack, *Renvoi, Characterization, Localization and Preliminary Question in the Conflict of Laws: A Study of Problems Involved in Determining Whether or Not the Forum Should Follow Its Own Choice of a Conflict-of-Laws Principle,* 14 S. Cal. L.Rev. 221, 224

(1941) (observing that "the forum is to perform the process of characterization in accordance with its own views—that is, the forum will not inquire whether or not the problem is similarly characterized by the jurisdiction to which the forum looks as the result of its own determination of the character of the problem"); *see also* Robert A. Leflar et al., *American Conflicts Law* § 87 at 257 (4th ed.1986).

■ {12} Plaintiffs' First Amended Complaint clearly relies on a common-law theory of tort liability. The complaint asserts that G & L's acts or omissions "constituted negligence which negligence was a proximate cause of the injuries to Plaintiffs which is made the basis of this cause of action." In determining which jurisdiction's law should apply to a tort action, New Mexico courts follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred. *First Nat'l Bank in Albuquerque v. Benson,* 89 N.M. 481, 553 P.2d 1288 (Ct.App.1976). Here, there is no dispute that the place where the wrong occurred was the job site in Las Cruces, New Mexico. *Torres v. State,* 119 N.M. 609, 613, 894 P.2d 386, 390 (1995) (observing that the place of the wrong is the location of the last act necessary to complete the injury); First Restatement § 377 n. 1 (observing that in determining the place of the wrong, "[t]he question is only where did the force impinge upon [the plaintiff's] body"). Thus, if the *lex loci delicti* is the appropriate conflicts rule, New Mexico tort law would determine the rights and liabilities as between Plaintiffs and G & L. Applying New Mexico's system of pure comparative negligence, G & L would be liable only for the percentage of Plaintiffs' damages attributable to G & L's negligence. NMSA 1978, § 41–3A–1(B) (1987); UJI 13–2219 NMRA; *Bartlett v. N.M. Welding Supply, Inc.,* 98 N.M. 152, 159, 646 P.2d 579, 586 (Ct.App.1982).

{13} Plaintiffs and Texas Mutual argue that once Texas Mutual was allowed to intervene in order to enforce its statutory subro-

gation rights,[1] the character of this lawsuit changed from a personal injury lawsuit governed by New Mexico tort law into a workers' compensation dispute governed by Texas law.[2] We are not persuaded that the facts of this case justify a departure from binding Supreme Court precedent endorsing the *lex loci delicti* rule. The foundation of this lawsuit is New Mexico tort law. Plaintiffs' affirmative right of recovery exists solely by virtue of the common law of New Mexico; it in no way depends upon Texas workers' compensation law. Texas Mutual's right to subrogation is "entirely derivative" of Plaintiffs' right to recover damages. *Guillot v. Hix,* 838 S.W.2d 230, 232 (Tex.1992); *see Amica Mut. Ins. Co. v. Maloney,* 120 N.M. 523, 528, 903 P.2d 834, 839 (1995) (observing that "in insurance subrogation cases … there is but one cause of action for the entire recovery, including the subrogated amount, and that cause of action lies in the name of the insured").

■ {14} We recognize that this case has significant connections with Texas. Our Supreme Court has not adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws §§ 6, 145 (1971) (hereinafter Second Restatement). *In re Estate of Gilmore,* 1997–NMCA–103, ¶ 20, 124 N.M. 119, 946 P.2d 1130 (discussing Second Restatement; observing that our Supreme Court "has not embraced" the Second Restatement approach to choice-of-law in either tort or contract). New Mexico's traditional *lex loci delicti* approach does not require—indeed, does not permit—a case-by-case policy analysis. Leflar et al, *supra,* §§ 86–87 (discussing the theory underlying the First Restatement, vested rights approach to choice-of-law). New Mexico courts have steadfastly applied the *lex loci delicti* rule in tort cases even when the connection between the lawsuit and New Mexico was largely fortuitous. *E.g., Benson,* 89 N.M. at 481, 553 P.2d at 1288 (applying New Mexico law to a wrongful death action arising out of an airplane crash in New Mexico in which all of the plaintiff's decedents were Missouri residents and the accident occurred as the plane was flying from Las Vegas, Nevada, to Missouri); *State Farm Mut. Auto. Ins. Co. v. Ballard,* 2002–NMSC–030, ¶ 7, 132 N.M. 696, 54 P.3d 537 (applying New Mexico tort law to a single car accident in New Mexico involving non-residents passing through New Mexico en route from California to Georgia). The case for applying New Mexico tort law is far stronger here than in either *Benson* or *Ballard.* G & L is a New Mexico corporation. G & L, Alamo, and Plaintiffs were purposefully present at a New Mexico construction site performing work that is licensed and regulated by the State of New Mexico. NMSA 1978, §§ 60–13–1 to –59 (1967, as amended through 2005).

{15} We hold that for choice-of-law purposes, G & L's right to assert comparative fault as a defense to a common-law negligence action brought by a plaintiff-worker is properly characterized as an issue of tort law, not workers' compensation law. Texas Mutual's intervention in this lawsuit to assert its derivative subrogation rights did not alter the character of the underlying common-law negligence action. Applying the established *lex loci delicti* choice-of-law rule, we hold that the substantive tort law of New Mexico governs G & L's right to assert the defense of comparative negligence.

■ {16} Plaintiffs argue that it is unfair to apply New Mexico tort law to reduce their recovery in proportion to the percentage of negligence attributable to Alamo, yet require Plaintiffs to reimburse Texas Mutual under Texas workers' compensation law, which does not correspondingly reduce Texas Mutual's subrogation interest in proportion to the percentage of comparative negligence attributable to Alamo. We recognize the possibility that, on remand, the net amount of Plaintiffs' recovery could be significantly reduced by a jury finding that Alamo was at

---

1. Tex. Lab.Code Ann. § 417.001 (Vernon 1996).

2. As compared with New Mexico law, Texas law in effect at the time this lawsuit was brought was significantly less favorable to a third-party tortfeasor sued by an injured employee. In particular, Texas law did not reduce the damages awarded against a third-party tortfeasor by the portion of damages attributable to the employer's negligence. *Dresser Indus., Inc. v. Lee,* 880 S.W.2d 750, 752 (Tex.1993) (discussing *Varela v. Am. Petrofina Co.,* 658 S.W.2d 561 (Tex.1983)).

fault, and yet, under Texas law, Texas Mutual would be entitled to recover its full subrogation interest, without any reduction reflecting Alamo's comparative negligence. We are not persuaded by Plaintiffs' suggestion that the only way to accomplish a fair result is to apply "the whole fabric of Texas law" to the exclusion of New Mexico's law of comparative negligence. In addition to requiring us to ignore the outcome plainly dictated by the *lex loci delicti* conflicts rule, Plaintiffs' proposed solution improperly focuses solely on fairness to Plaintiffs at the expense of fairness to G & L: "Our system of pure comparative negligence is based on fairness to both plaintiffs *and defendants.*" *Andrews v. Saylor,* 2003–NMCA–132, ¶ 26, 134 N.M. 545, 80 P.3d 482. It may be that the fairer outcome would have resulted from the application of a choice-of-law rule directing us to the whole law of New Mexico, including New Mexico law governing the subrogation rights of workers' compensation insurers. However, in both the district court and this Court, Plaintiffs, joined by Texas Mutual, argued that the whole law of Texas should apply. Plaintiffs did not make the fallback argument that if New Mexico law applies to the issue of comparative negligence, New Mexico law should also apply in determining Texas Mutual's subrogation interest. Moreover, Plaintiffs did not appeal from that portion of the judgment determining Texas Mutual's subrogation interest according to Texas law. Whether Texas Mutual's subrogation interest in Plaintiffs' recovery should have been determined according to New Mexico law is a choice-of-law question that is not before us in this appeal.

{17} We briefly address two arguments in order to note that they seriously mischaracterize the facts of record or the governing law. First, Plaintiffs argue that G & L invited the district court's error in applying Texas law. Our examination of the record reveals that G & L asserted the defense of comparative fault at every appropriate juncture and that G & L vigorously opposed Plaintiffs' and Texas Mutual's efforts to displace New Mexico tort law with Texas workers' compensation law. G & L did not invite the district court's error in excluding the defense of comparative negligence. Second, Plaintiffs argue that the Full Faith and Credit Clause of the United States Constitution, Article IV, Section 1, requires New Mexico courts to apply Texas workers' compensation law rather than New Mexico tort law. This argument is entirely without merit. *Carroll v. Lanza,* 349 U.S. 408, 411–12, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); Scoles et al., *supra,* § 3.24 at 158; Leflar et al., *supra,* § 163 at 464–65.

**CONCLUSION**

{18} We affirm the judgment to the extent it fixes the total amount of Plaintiffs' damages and the amount of Texas Mutual's subrogation interest with respect to each Plaintiff; we reverse and remand for a new trial in which principles of comparative negligence are to be applied in determining the liability of those persons whose negligence is determined to have caused Plaintiffs' injuries.

{19} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and LYNN PICKARD, Judge.