Filed 1/4/23  Sahakyan v. City of Los Angeles CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| SUREN SAHAKYAN, | B308113 |
| Petitioner and Cross-complainant, | (Los Angeles County Super. Ct. No.19STCP03117) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Real Parties in Interest and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James C. Chalfant, Judge.  Affirmed.

The Myers Law Group, D. Smith and Justin Morgan Crane, for Petitioner and Cross-complainant.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Deputy City Attorney, Scott Marcus, Assistant City Attorney, Blithe S. Bock, Managing Assistant City Attorney, and Shaun Dabby Jacobs, Deputy City Attorney, for Real Parties in Interest and Appellants.

_____

Petitioner and cross-complainant Suren Sahakyan (Sahakyan) was terminated from his employment as an accountant for Los Angeles World Airports (LAWA) after he was arrested for theft of DVDs from a Target store and assault on the Target security personnel who detained him. Sahakyan filed a writ of mandate in superior court seeking to compel the Los Angeles Civil Service Commission (Commission) to set aside its decision upholding his termination as an employee of Real Party in Interest City of Los Angeles (City), which was based on the theft and assault at Target and other unrelated misconduct. The trial court granted Sahakyan's petition in part and remanded the matter back to the Commission to determine the appropriateness of the penalty of termination. The City appeals this decision. Sahakyan cross-appeals. We reject both appeals and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I. Background

Sahakyan is a former employee of LAWA, where he was employed as an Accountant II. Accountants II are responsible for cash deposits, bank reconciliations, financial statements, accounting documents, and various other financial reports and documents. They also oversee approximately $5 to $6 million per day in checks and wire transfers, monitor City-issued purchasing cards for other employees, and have access to City bank accounts and to vendor and other third party bank accounts. Accountants II have access to blank checks, but not to cash.

## II. Sahakyan's Arrest, Criminal Proceedings, and Diversion Program

In March 2017, Sahakyan was arrested for theft of DVDs from a Target store in the Eagle Rock neighborhood of Los Angeles, and for assaulting two Target Assets Protection Specialists (Security Officer(s)) who tried to detain him outside the store after they witnessed him, via security cameras, taking the DVDs without paying for them. When the first Security Officer approached Sahakyan and asked him to reenter the Target, Sahakyan threw "several punches" and attempted to leave the area. A second Security Officer attempted to restrain him, but Sahakyan scratched him. It ultimately took five Security Officers to restrain Sahakyan. Target security video recorded the theft and assault, which was also supported by eyewitness testimony.

The Los Angeles District Attorney's Office filed a criminal complaint against Sahakyan alleging two counts of felony robbery under Penal Code section 211. The prosecutor subsequently dismissed the two felony robbery counts (for reasons unclear from the record), and charged Sahakyan instead with two counts of felony assault against the Target officers, in violation of Penal Code section 245, subdivision (a)(4). As part of a plea deal, on August 31, 2017, a charge of misdemeanor battery was added to the criminal complaint, the felony assault charges were dismissed, Sahakyan pled nolo contendere to misdemeanor battery only, and the trial court found a factual basis for the plea. Sahakyan was placed on probation and the case was to be dismissed in its entirety at the sentencing hearing if he completed community service and was not arrested for the next year.

Sahakyan completed all of this court-ordered community service by December 20, 2017.

On April 2, 2018, Sahakyan's criminal defense attorney filed a motion to change his initial "D.A. Diversion" to "judicial diversion" nunc pro tunc to August 31, 2017, pursuant to Penal Code section 1001.94, subdivision (a), which allows a first time offender to plead guilty or nolo contendere to a misdemeanor and defer sentencing until successful completion of the Diversion Program. When this type of Diversion Program is completed, there is no entry of judgment, and the arrest is deemed to have not occurred.

The criminal court granted the motion on April 9, 2018. That very same day, the court dismissed the case early because Sahakyan had already completed the terms of his court-ordered diversion on December 20, 2017 and had no arrests. The order also states that Sahakyan stipulated that there was probable cause for his arrest.

In July 2018, upon Sahakyan's motion, the criminal court granted Sahakyan's application to seal and destroy his arrest record.

## III.  Badge Suspension

As an employee of LAWA, Sahakyan was required to have a security badge. To have the security badge, Sahakyan was required to undergo a background check every two years and obtain a security clearance. If an employee is arrested for certain offenses, they lose their security clearance unless they submit proof that the issue has been resolved in their favor or they otherwise show they are still eligible for their security badge.

On March 2, 2017, the LAWA security badge office was notified of Sahakyan's arrest pursuant to Transportation Security Authority (TSA) regulations, and it advised Sahakyan that he had one month to provide proof that the felony charges were resolved in his favor, or he would lose his badge. Sahakyan was unable to do so within the month, so lost his badge and was unable to work at LAWA for a period of approximately three and a half months (May 11, 2017 to August 19, 2017) while his criminal proceeding was pending. During the time that Sahakyan could not work, his absence impacted his colleagues, who were "short staffed" and had to cover his work.

## IV. Discharge

On September 20, 2017, LAWA sent Sahakyan a Notice of Proposed Discipline, also known as a *Skelly*[1] Notice (Notice), along with exhibits purporting to contain the materials that supported its decision to terminate his employment. The Notice alleged violations of seven rules set forth in LAWA Administrative Manual, Disciplinary Standards, based on the LAWA Rules of Conduct (Disciplinary Standards): (Charge 1) illegal behavior or conduct in conflict with job duties on or off the job; (Charge 2) violation of department rules (those rules governing the ethics policy, rules of conduct, outside employment and business activity policy, and employee identification badges); (Charge 3) failure to perform work assignments adequately or promptly; (Charge 4) failure to provide information related to work; (Charge 5) falsifying city records; (Charge 6) falsely claiming sick or allowed pay, falsifying reasons for absence; and

---

[1]     (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*).)

(Charge 7) using City time, property, or equipment without authorization.

In relevant part for purposes of this appeal, the Notice stated that Sahakyan had been arrested on March 2, 2017 and charged with felony robbery.

The Notice also stated that during Sahakyan's discussions with staff from the Airport Police Division Adjudication and Confidential Records Unit (ARCU) who were investigating the arrest, Sahakyan had disclosed outside employment, but his personnel folder did not have a record of approved outside employment. The Notice further stated that there was reason to believe that Sahakyan may hold additional outside employment, which Sahakyan was also required to report on an annual basis. It did not specify what kind of additional employment, but Sahakyan was later found to work at two different colleges and had only disclosed the employment at one college during his discussions with staff.

The Notice further alleged that Sahakyan had previously been confronted about making unauthorized photocopies for his personal use (a college test), which, with the failure to disclose outside employment, allegedly demonstrated a "pattern of dishonesty."

After a *Skelly* hearing on November 8, 2017, at which Sahakyan filed a written response to the charges, LAWA notified Sahakyan his discharge would be effective December 5, 2017. Sahakyan filed an appeal of that decision with the Commission.

## V.    Hearing and Commission's Final Decision

A Commission Hearing Officer held a hearing on Sahakyan's appeal over three days in May 2018. After receiving evidence and testimony from both sides, the Hearing Officer

6

made recommendations to the Commission. The officer recommended that the Commission find that Sahakyan's *Skelly* due process rights were met as to all of the charges against him except for two (as to Charge 1 and Charge 7), with a remedy for those violations of backpay from the date of the termination to the date the Commission would file its final decision as to remedy. The Hearing Officer also recommended that the Commission sustain Charges 1 (off-duty misconduct in conflict with job duties), 2 (violating departmental rules relating to disclosure of outside employment), and 5 (falsifying city records), but not the other charges, and found that discharge was the appropriate penalty. Charges 2 and 5 were both based on Sahakyan's failure to report his outside employment.[2]

In April 2019, the Commission unanimously voted to adopt the Hearing Officer's decision to uphold the discharge, but rejected the award of backpay for the *Skelly* violation because it found no *Skelly* violations. In May 2019, the Commission notified Sahakyan that his discharge was upheld. The Commission stated that it found the *Skelly* due process provisions were met, and upheld termination based upon Charges 1, 2, and 5.

## VI. Writ Proceedings and Trial Court Decision

In July 2019, Sahakyan filed a petition for writ of mandate in Los Angeles Superior Court. In July 2020, the trial court granted the writ in part, finding a *Skelly* violation, and remanded back to the Commission to determine the amount of backpay Sahakyan was entitled to. The Commission was ordered to reevaluate whether the penalty of termination could be upheld

---

[2] The Hearing Officer found that Sahakyan's failure to disclose his outside employment was intentional and resulted in the falsification of City records.

7

given the court's disagreement with some of the reasons the Commission relied on to uphold Sahakyan's termination.

The trial court found that Sahakyan's *Skelly* due process rights had been violated with respect to Charge 1, finding that the Notice contained no information or material regarding the underlying conduct that lead to Sahakyan's arrest. The court noted that LAWA decided to terminate him based only on the arrest and his inability to hold a badge, and not the underlying off-duty misconduct conduct. It was "months later" that LAWA belatedly presented evidence of the misconduct in the form of surveillance videos, police reports, and witness testimony, which was not attached to the Notice. Because it found a *Skelly* violation, it found Sahakyan entitled to the remedy of back pay from the effective date of discharge to the date of the Commission's decision.

The trial court then upheld Charge 1 as a basis for discharge, but only with respect to the off-duty misconduct of theft, and not to the off-duty assault, finding a lack of nexus between the assault and Sahakyan's employment.

Lastly, the trial court found that the Commission erred when it found that Sahakyan's failure to report his outside employment could be charged as two violations: Charge 2, violation of departmental rules, and Charge 5, falsifying City records. The Commission found that Sahakyan violated both policies because his failure to report his outside employment was intentional, stating "by intentionally not [reporting his outside employment], he falsified [C]ity records" and his "failure to disclose was intentional." The trial court overturned the Commission as to Charge 5, falsifying records, stating it is an "absurdity to conclude . . . that Sahakyan's willful violation

8

amounted to a 'falsification of City records' by omission. One simply cannot falsify something by omission. Falsification requires an affirmative act. Sahakyan did nothing affirmatively; he deliberately failed to act." The trial court therefore upheld only Charge 2, violation of departmental rules by not reporting his outside employment.

The trial court also noted that under the applicable rules, there were two different penalties for Charge 2 and Charge 5. A violation for failure to report outside employment has a maximum five-day suspension for the *first offense* when charged, as it was, as a "violation of departmental rules" in violation of LAWA Disciplinary Standard 5.020(B)(1). Falsification of records could result in discharge for the first offense, but this was Charge 5, which the trial court dismissed. Accordingly, Sahakyan's failure to report his outside employment did not carry the penalty of discharge, but only a five-day suspension.

The trial court then remanded for a re-evaluation of whether Sahakyan's termination could be upheld based only upon: Charge 1's off-duty misconduct involving theft from Target (but not the assault, which the Commission had also based Charge 1 upon), Charge 2's failure to report outside employment (which had a penalty of a five-day suspension), and the two previous Notices to Correct Deficiencies that the Commission had relied upon in upholding the discharge (for unauthorized use of City equipment for making personal copies and lying about it, and for failing to perform his work in a timely manner).

The City appealed. Sahakyan cross appealed.

## DISCUSSION

On appeal, the City argues that this court should uphold the Commission's decision to terminate Sahakyan's employment, that the Commission properly based its decision to terminate Sahakyan on his off-duty theft and assault (Charge 1), and that Sahakyan was given adequate due process under *Skelly, supra,* 15 Cal.3d 194.[3]

In his cross-appeal, Sahakyan argues that the Commission and trial court erred by relying upon irrelevant, "post hoc" evidence in violation of California Labor Code section 432.7 in sustaining Charge 1, and that California Labor Code section 432.7 preempts the City's disciplinary standards.

## I.    Standard of Review

Sahakyan filed a writ of administrative mandamus under section 1094.5, which "structures the procedure for judicial review of adjudicatory decisions rendered by administrative agencies." (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514.)  Because the Commission's order affects the right to practice a trade or profession, which is a fundamental vested right, the trial court correctly exercised its independent judgment in reviewing the administrative record.  (*Davis v. Los Angeles Unified School Dist. Personnel Com.* (2007) 152 Cal.App.4th 1122, 1130 [agency decision impacting employee's fundamental vested right to his or her job requires exercise of trial court's independent review].)

---

[3]    The City has not argued that the trial court's dismissal of Charge 5 should be overturned.

10

On appeal, we review the trial court's factual findings (not the administrative agency's findings) for substantial evidence. (*Candari v. Los Angeles Unified School Dist.* (2011) 193 Cal.App.4th 402, 407–408 (*Candari*), citing *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10.) We independently review any questions of law, including whether the procedures comported with due process, pursuant to *Skelly, supra,* 15 Cal.3d 194. (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1275 (*Gilbert*); *Thornbrough v. Western Placer Unified School Dist.* (2013) 223 Cal.App.4th 169, 179.)

As to remedy, "[i]t is well settled that in a mandamus proceeding to review an administrative order the determination of penalty by the administrative body will not be disturbed unless there is a clear abuse of discretion." (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 226–227, citing *Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 404 ["Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed"].)

## II. Sahakyan's Due Process Rights Were Violated Under *Skelly* as to Charge 1.

The trial court ruled that Sahakyan's *Skelly* due process rights were violated as to Charge 1. The City argues this was error. We disagree and affirm the trial court.

Under *Skelly*, *supra*, 15 Cal.3d 194, the California Supreme Court held that due process entitles public employees to certain procedural protections before discipline may be imposed against them. These include: "notice of the proposed action, including a detailed statement of the reasons therefor, the right to examine all materials relied upon to support the charges, the opportunity

11

to respond either orally or in writing or both (with affidavits) before a representative of the employing agency with authority to make or recommend a final decision, and written notice of the agency's decision on or before the effective date of the action. [Citation.]" (*Skelly, supra*, 15 Cal.3d at p. 206.) "Subsequent to *Skelly*, the California Supreme Court and the United States Supreme Court have repeatedly recognized that due process is a flexible concept," and does not require production of "each and every document" in the case to be presented prior to the pre-termination, or *Skelly*, hearing. (*Gilbert, supra*, 130 Cal.App.4th at pp. 1276, 1280.) However, a " 'tenured public employee is entitled to oral or written notice of the charges against him, *an explanation of the employer's evidence*, and an opportunity to present his side of the story.' " (*Gilbert*, 130 Cal.App.4th at p. 1277, original italics, citing *Cleveland Bd. Of Educ. V. Loudermill* (1985) 470 U.S. 532, 546.) An employer complies with *Skelly* when it provides the employee with statements of witnesses, documents, and investigative reports or extracts therefrom. (*Gilbert, supra*, 130 Cal.App.4th at pp. 1275–1276, 1280.) The employee has " ' the right to be informed not only of the nature of the charges but also of the substance of *the relevant supporting evidence.*' " (*Id.* at p. 1278; see also *Ferguson v. City of Cathedral City* (2011) 197 Cal.App.4th 1161, 1170 [holding no *Skelly* violation where employee received "notice of the proposed discharge, the reasons, a copy of the charges and the evidence, and the right to respond"].)

The trial court found the Notice deficient under *Skelly* as to Charge 1 because it failed to provide Sahakyan with an explanation of the evidence against him. As to Charge 1, which is off-job misconduct in violation of the LAWA Administrative

12

Manual, Guide to Disciplinary Standards, § 5.020(A), Off Duty Misconduct, the Notice stated only that Sahakyan was accused of "[e]ngaging in illegal behavior or conduct in conflict with job duties on or off the job," and that "[o]n March 2, 2017, you were arrested because of off-duty misconduct and charged under Penal Code § 211 for Felony Robbery." The Notice also stated that because of the arrest, Sahakyan's security badge was recalled. The Notice contained no explanation of the substance of the relevant supporting evidence against Sahakyan to support Charge 1, nor was this evidence attached to the Notice. (See *Gilbert, supra,* 130 Cal.App.4th at p. 1277.) While the City ultimately introduced evidence of the misconduct underlying the arrest at the May 2018 appeal hearing, which included surveillance videos, police reports, and witness testimony, none of this was presented with the Notice. The only evidence as to Charge 1 presented with the Notice was a "California Department of Justice Arrest Notification," a felony complaint and information, and Sahakyan's statement acknowledging "an incident on March 2, 2017" and a related "pending legal case." None of these documents mention a theft or assault, let alone provide any indication of the relevant supporting evidence as to the charged off-duty conduct of theft and assault. As the trial court found, the Notice shows that the City provided Sahakyan notice that it was going to terminate him because he was arrested and he lost his badge, not because of the underlying theft or assault, which are entirely absent from the Notice and its supporting exhibits. Because the Notice failed to provide any summary of, or evidence in support of, the off-duty misconduct, it is insufficient under *Skelly* and its progeny. (See *Gilbert*, *supra*, 130 Cal.App.4th at pp. 1277–1278.)

13

The City argues that by providing the criminal complaint alleging the two counts of felony robbery, criminal information, amended information that contained the subsequent assault charges, and the criminal court docket with the Notice, Sahakyan's *Skelly* due process requirements were fulfilled. It cites *Gilbert*, *supra*, for the proposition that Sahakyan bore the burden in this writ proceeding of showing that the materials received prior to his *Skelly* hearing were insufficient to provide him an "opportunity to meaningfully respond at the pretermination stage." (*Gilbert*, *supra*, 130 Cal.App.4th at p. 1281.)  The City also points to Sahakyan's *Shelly* response, and the fact that he had "access to the arrest report" and was present at the criminal court proceedings, to argue that Sahakyan understood the conduct upon which the off-duty misconduct charge was based.  But as the trial court recognized when the City made the same argument below, the City fails to recognize its obligation to provide not only notice of the charge against employee but also an " explanation of the evidence' " and the " '*substance of the relevant supporting evidence*' " supporting that charge. (*Gilbert*, *supra*, 130 Cal.App.4th at pp. 1278–1279.)

Although the City is correct in citing *Gilbert* that not every piece of evidence must be produced prior to the *Skelly* hearing, here neither the Notice nor the evidence attached to it explained or summarized the evidence of the theft or assault—i.e. the offending off-duty misconduct that provided the basis for Charge 1.  In *Gilbert*, the employer's notice detailed "the supporting facts" underlying the charges against the employee and also recited the type of evidence it had against the employee to support those facts, including witness interviews and photographs.  (*Cf. Gilbert*, *supra*, 130 Cal.App.4th at p. 1272.)

14

The trial court did not err in finding Sahakyan's *Skelly* due process rights violated as to Charge 1.

## III. The Trial Court Did Not Err In Sustaining Charge 1 Based Upon Sahakyan's Theft

Sahakyan's cross appeal makes several arguments that Charge 1 was not a valid basis for discharge. He argues that both the Commission and the trial court erred by relying on evidence to sustain Charge 1 that violated California Labor Code section 432.7 (violation of the LAWA Administrative Manual, Guide to Disciplinary Standards, section 5.020(A), Off Duty Misconduct), and that Disciplinary Standards, section 5.020(A), Off Duty Misconduct is preempted by California Labor Code section 432.7.

### A. Impact of Section 432.7 of the Labor Code

Under Labor Code section 432.7, it is unlawful for an employer to terminate an employee based on an arrest that did not result in a conviction or was ultimately dismissed. Labor Code section 432.7, subdivision (a)(1) provides:

"An employer also shall not seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including hiring, promotion, termination, or any apprenticeship training program or any other training program leading to employment, any record of arrest or detention that did not result in conviction, or any record regarding a referral to, and participation in, any pretrial or posttrial diversion program, or concerning a conviction that has been judicially dismissed or ordered sealed pursuant to law, including, but not limited to, Sections 1203.4, 1203.4a, 1203.425, 1203.45, and 1210.1 of the Penal Code. This section shall not prevent an employer from asking an employee or applicant for employment about an arrest

15

for which the employee or applicant is out on bail or on their own recognizance pending trial." (Lab. Code, § 432.7.)

Critically, this section does not prevent an employer from terminating an employee for the underlying conduct that formed the basis for the arrest; it only prohibits a discharge based merely on the fact of the arrest itself. "The clear purpose of section 432.7 is to prevent the misuse of criminal offender records information, not to shelter an employee from an investigation by his employer for serious misconduct." (*Pitman v. City of Oakland* (1988) 197 Cal.App.3d 1037, 1044 (*Pitman*).) "[T]he statute cannot be read as permitting the employer *to utilize* the information of a mere arrest for disciplinary purposes. To hold otherwise would violate the fundamental presumption of a suspect's innocence prior to the contrary being proved. *That the statute allows an employer to inquire about arrest is reasonable.* As defendants pointed out, it is proper that a bank be made aware that one of its employees has been arrested for embezzlement . . . . However, we do not read the statute as authorizing the utilization of an arrest alone as a factor in determining to dismiss an employee." (*Ibid.*, italics added.)

Sahakyan argues that Labor Code section 437.2 prevented the trial court from upholding Charge 1 because he was placed in the Diversion Program, which he successfully completed, and thus his arrest must be deemed to have never occurred. Charge 1, however, was based not on the fact of the arrest, but on the underlying misconduct. The City was entitled to investigate the conduct that led to the arrest. (*Pitman*, *supra*, 197 Cal.App.3d at p. 1044.) The Commission found that the evidence from the May hearing (including witness testimony and video recordings) established that Sahakyan committed off duty misconduct by

16

stealing from Target and assaulting a Target security officer. The City was entitled to investigate the facts leading to the arrest and then to prove them at that hearing as establishing off-duty misconduct. (*Sandoval v. State Personnel Bd.* (1990) 225 Cal.App.3d 1498, 1502; see also *Pinheiro v. Civil Service Com. for County of Fresno* (2016) 245 Cal.App.4th 1458, 1471, fn. 3 ["[T]he trial court determined the Commission did not violate Labor Code section 432.7 when it found that Pinheiro engaged in the repeated theft of potato chips and soda from sandwich shops, as in so finding, the Commission relied on direct evidence outside the law enforcement reports in the form of the testimony of a sandwich shop owner and a sheriff, both of whom witnessed the thefts"].) Here, the Commission did not rely on the arrest itself, but rather on the evidence submitted at the hearing, in finding Charge 1 was supported by the evidence. The same is true of the trial court as to the evidence of the theft, which the court found sustained Charge 1. Thus, Labor Code section 432.7 has no bearing on the proof of the underlying misconduct which the Commission and trial court found supported Charge 1.[4]

---

[4] Sahakyan's citation at oral argument to *Garcia-Brower v. Premier Automotive Imports of CA, LLC* (2020) 55 Cal.App.5th 961, 973–977, does not change our analysis. *Garcia-Brower* dealt with an employment termination that was allegedly based on the mere existence of a conviction (that had been dismissed), which is exactly the conduct prohibited by Labor Code section 432.7. (*Ibid.*) *Garcia-Brower* does not address a termination decision based on independent evidence of the facts underlying the conviction, as occurred here.

17

We find that substantial evidence supported the trial court's finding that Charge 1 was proven as to the off-duty theft, based on video recordings and witness testimony.[5]

## B. The Evidence to Support Charge 1 Is Admissible and Relevant

Sahakyan argues in his cross-appeal that the evidence in support of Charge 1 was "inadmissible" because it was "post-hoc" and violated Labor Code section 432.7. As he did before the trial court, Sahakyan conflates the evidence required at the *Skelly* Notice stage (to comport with due process) with the evidence to prove discharge at a subsequent hearing. He argues that because LAWA did not produce evidence of the off-duty misconduct until after the *Skelly* hearing, and only produced the evidence at the Commission hearing, the evidence was somehow inadmissible because it was "post-hoc." Sahakyan is confusing a *Skelly* violation, for which the remedy is backpay, with the admissibility of the evidence that supported the Commission's decision. He points to no case law suggesting that a failure to provide adequate notice under *Skelly* renders the evidence that should have been summarized at the *Skelly* hearing inadmissible in later proceedings. The question of "whether the employer had a legitimate basis to terminate the employee's employment and whether the employee is entitled to reinstatement are questions entirely distinct from whether the employee is entitled to backpay for the period during which the discipline was invalid" [due to a lack of due process]. (*Economy v. Sutter East Bay Hospitals* (2019) 31 Cal.App.5th 1147, 1162.)

---

[5] Sahakyan does not argue on appeal that the facts underlying his arrest for *theft* lacked nexus to his employment, so we do not address that issue.

18

Moreover, as the trial court noted in rejecting this same argument, Sahakyan does not argue that he did not understand that Charge 1 included the underlying misconduct due to the failure to produce the evidence earlier.  Nor did he exhaust his administrative remedies by arguing before the Hearing Officer that Charge 1 was too vague.  As Sahakyan admits, his claim at the hearing in regard to Charge 1 was simply that because he successfully completed his diversion program, his arrest could not be considered under Labor Code section 432.7.

We reject Sahakyan's argument that the testimony and video evidence of the theft and assault, which the City presented at the hearing but not at the *Skelly* stage of proceedings, was inadmissible and thus could not be a basis for Charge 1.

### C. We Decline to Address Sahakyan's Preemption Argument

Sahakyan argues for the first time on appeal that Charge 1 is preempted by section Labor Code section 432.7.  He specifically claims Charge 1's reliance on Disciplinary Standards section 5.020(A), definition of Off Duty Misconduct as "Engaging in illegal behavior or conduct in conflict with job duties on or off the job" is preempted.  Sahakyan correctly claims that issues of preemption that concern *subject matter jurisdiction* may be raised for the first time on appeal, citing *Detomaso v. Pan American World Airways, Inc.* (1987) 43 Cal.3d 517, 520, footnote 1.  But here, there is no suggestion by Sahakyan that we lack jurisdiction.  We therefore decline to exercise our discretion to address this belatedly raised issue for the first time on appeal, particularly because Labor Code section 432.7 is inapplicable, for the reasons we described *ante*.  (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567 [consideration of arguments not raised

below is within appellate court's discretion and is not mandatory].) Sahakyan could have raised his preemption argument before the trial court in his writ of mandamus, and he did not preserve it by raising it for the first time in the administrative proceedings. (See *Delta Dental Plan of California, Inc. v. Mendoza* (9th Cir. 1998) 139 F.3d 1289, 1296.) He does not argue that there is a public interest reason that we should consider it for the first time on appeal. (Cf. *Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 755 [considering preemption arguments by noting, "[w]hile we do not condone appellants' failure to address these issues to the trial court, *in light of their public importance*, we will exercise our discretion to address the merits of appellants' argument," italics added].)

We decline to review Sahakyan's preemption argument for the first time on appeal.

### D. The Trial Court's Finding of a Lack of Nexus Between Sahakyan's Employment and His Assault on Target Security Officers Is Supported by Substantial Evidence

The trial court sustained Charge 1 based on the nexus between his off-duty theft and Sahakyan's employment as an accountant for LAWA. This determination has not been argued as a ground for appeal. But the City does argue that the trial court erred in not also finding a nexus between the off-duty assault and Sahakyan's employment. While not necessary to uphold Count 1, we address this issue because it is pertinent to the trial court's decision to remand for a re-determination of the appropriateness of termination as the remedy, which is on appeal.

20

There is no dispute that discipline for off-duty misconduct is justified if the misbehavior causes discredit to the agency, and there is a rational relationship between the misconduct and the person's employment.  (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 50.)  "If the misconduct bears some rational relationship to the employment and is of a character that can reasonably result in the impairment or disruption of public service, it should be no less a cause for discipline" because it occurred off duty.  (*Blake v. State Personnel Board* (1972) 25 Cal.App.3d 541, 550.)

The City argues that Sahakyan's assault on the Target Security Officers has a rational relationship to his employment at LAWA because it shows his inability to handle stress, which is "directly linked to his employment."  The evidence the City cites in support of this claim is testimony by LAWA's Human Resources Director opining that as someone who handles large amounts of money for the airport, Sahakyan needs to be able to remain calm and think clearly "in pressure situations" and not "lash out when confronted."  The City does not point to any record evidence that Sahakyan had a particularly stressful job that required him to think clearly under pressure.  Handling checks and accounting for large amounts of money requires honesty and is arguably a large responsibility, but there was no evidence it involves a uniquely high level of stress.  The trial court was within its discretion in concluding that dealing with the stress of forcefully being detained for arrest by multiple Target Security Officers is quite unlike the daily stress encountered by an accountant.  The trial court's finding of a lack of nexus between Sahakyan's assault at Target and his employment is supported by substantial evidence, and is a finding the trial court was

21

entitled to make. " 'Where the evidence supports more than one reasonable inference, we are not at liberty to substitute our deductions for those of the trial court.' [Citation.]" (*Candari, supra*, 193 Cal.App.4th at p. 408.)

In sum, the trial court did not err in upholding Charge 1 based only on the theft, due to a lack of nexus between the assault and Sahakyan's employment.

## IV. The Trial Court Did Not Err in Remanding for Redetermination of the Remedy of Discharge

The City argues that the trial court erred in remanding to the Commission for reconsideration of the remedy imposed because the court was required to defer to the agency's decision to impose the penalty of dismissal.

The City asserts that because Charge 1, even considered by itself, carried a potential penalty of discharge, the Commission's decision as to remedy was not an abuse of discretion, so the trial court erred in ordering reassessment of the remedy. But the City misunderstands why the trial court remanded. In *Shepherd v. State Personnel Board* (1957) 48 Cal.2d 41 (*Shepherd*), our Supreme Court did not substitute its own discretion for the administrative agency when it directed the trial court to enter judgment instructing the agency to redetermine the penalty on remand. The court found that the administrative board imposed the penalty of dismissal based, at least in part, on conduct which was not proper cause for discipline. "We did not presume to alter or annul the penalty itself, but merely remanded the case to the board for reconsideration in light of our opinion." (*Nightingale v. State Personnel Board* (1972) 7 Cal.3d 507, 515, discussing *Shepherd, supra,* 48 Cal.2d at p. 51.) The same is true here.

The Commission's statement of reasons shows that it determined that discharge from employment was the appropriate remedy based upon Charge 1 (based on both the theft and assault), Charge 2 (based on violating the rule requiring disclosure of outside employment), Charge 5 (based on falsifying records by failing to report outside employment), and consideration of the 2016 Notices to Correct Deficiencies regarding unauthorized copies and failing to perform work in a timely manner.

After the trial court's decision, only some of these bases for dismissal remained, which is why it decided that the Commission should determine in the first instance whether the penalty of discharge was still appropriate. The trial court found Charge 5 of falsifying records unsupported.[6] It found Charge 1 supported by the theft only, and not the assault. Finally, it found that the maximum penalty for a first time offense of Charge 2 was a five-day suspension, rendering Charge 2 not an independent basis for dismissal.[7] Thus, the trial court properly determined that remand for Commission reevaluation of the penalty was required. (See *Shepherd*, *supra*, 48 Cal.2d at p. 51.)

---

[6]     Neither party has challenged this finding on appeal, and therefore we express no opinion about the court's ruling.

[7]     The City argues that Charge 2 could support discharge, but the trial court's determination is supported by the record. A violation for failure to report outside employment has a maximum five-day suspension for the *first offense* as a "violation of departmental rules" in violation of LAWA Standard 5.020(B)(1). Only the third offense has a suggested penalty of discharge.

23

## V.    The Request for Judicial Notice Is Denied

Sahakyan asks us to take judicial notice of the State of California, Department of Consumer Affairs, Bureau of Security and Investigative Services, Power to Arrest Training Manual (Manual) from June 2015.  The Manual relates to a private security guard's power to arrest.  Sahakyan claims that the Manual will show that the security guards at Target who detained him committed an unlawful arrest and used excessive force against him.  He claims this is relevant to the trial court's finding that Charge 1 is supported by substantial evidence.

We find this information irrelevant and reject the request for judicial notice of the Manual on this ground.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1 (*Ketchum*) ["[B]ecause such materials have little relevance to a material issue in this matter, we deny the request"]; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 ["[A]ny matter to be judicially noticed must be relevant to a material issue"].)

Moreover, Sahakyan admits that he never submitted the Manual into the administrative record, or asked the trial court to take judicial notice of it.  This is an alternative reason to deny the admission of the Manual.  "Generally, when a court considers a writ for administrative mandamus, it reviews only the record of the proceeding before the administrative agency.  [Citation.] Code of Civil Procedure section 1094.5, subdivision (e) allows the administrative record to be augmented with relevant evidence in certain situations, such as when the evidence was excluded improperly from the administrative hearing or could not be produced through the exercise of reasonable diligence."  (*Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478, 1520 (*Smith*).)  Sahakyan did not try to admit the Manual at the

24

administrative hearing, and he does not argue that it could not have been produced through the exercise of reasonable diligence.

Sahakyan also requests that we take judicial notice of Assembly Floor Analysis relating to Assembly Bill No. 1076 (Ting), which he seeks to admit in support of his argument that the Labor Code preempts LAWA disciplinary rules. Because we decline to consider his preemption argument, this evidence is not relevant, so we also decline to take judicial notice. Sahakyan has also not explained why this could not have been produced before the administrative agency. (See *Ketchum*, *supra*, 24 Cal.4th at p. 1135, fn. 1; *Smith*, *supra*, 164 Cal.App.4th at p. 1520.)

## DISPOSITION

The judgment is affirmed. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


HARUTUNIAN, J.[*]

We concur:


STRATTON, P. J.


GRIMES, J.

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25